# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MARCA A. ZACHARY,               )
                                )
                    Plaintiff,  )        CIVIL ACTION
                                )
v.                              )        No. 18-2288-KHV
                                )
ANDREW M. SAUL,*                )
Commissioner of Social Security,)
                                )
                    Defendant.  )
_____ )

## MEMORANDUM AND ORDER

Marca A. Zachary appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-434. For reasons stated below, the Court reverses the Commissioner's decision and remands for further proceedings.

## Procedural Background

On January 29, 2015, plaintiff filed a protective application for a period of disability and disability insurance benefits, alleging that her disability began on November 18, 2014. Transcript Of Administrative Record ("Tr."), attached to <u>Answer</u> (Doc. #8) filed August 27, 2018 at 15. She later amended her alleged onset date to January 1, 2015. Initially and upon reconsideration, the agency denied plaintiff's application. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on January 25, 2017. On May 12, 2017, the ALJ determined that plaintiff was not

_____

        *        On June 4, 2019, Andrew M. Saul was confirmed as Commissioner of the Social Security Administration.    Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for former Commissioner Nancy A. Berryhill as defendant in this suit.

disabled within the meaning of the SSA. Plaintiff requested review by the Appeals Council, which denied her request. Plaintiff appeals.

## Legal Standards

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052 (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if substantial evidence supports the decision, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## Factual Background

Highly summarized, the record states as follows:

Plaintiff was born on April 29, 1976. She claims disability beginning on January 1, 2015 because of ankylosing spondylitis,[1] arthritis throughout the body, sacroiliitis, fibromyalgia, osteoarthritis lumbar radiculopathy, constant backaches and high blood pressure. Tr. 207.

---

[1] Ankylosing spondylitis is an inflammatory disease that over time causes vertebrae in the spine to fuse, making the spine less flexible. This can result in a hunched-forward posture. See Mayo Clinic, Patient Care & Health Information, Diseases & Conditions, Ankylosing Spondylitis, Overview, https://www.mayoclinic.org/diseases-conditions/ankylosing-spondylitis/symptoms-causes/syc-20354808 (last visited June 12, 2019).

# I.  Medical Evidence

Plaintiff is approximately 6 feet tall.  She weighed 326 pounds on July 1, 2014 and 420 pounds on January 5, 2017.

On November 27, 2013, plaintiff's treating rheumatologist, Shashank Radadiya, M.D., noted that the claimant was taking Humira for her ankylosing spondylitis.  Dr. Radadiya reported that plaintiff complained of moderate to severe pain in her lower back and left hip, and that activity aggravated her symptoms.  Tr. 23.  On January 27, 2014, Dr. Radadiya noted that plaintiff had severe musculoskeletal pain and was experiencing activity limitation and morning stiffness.  Tr. 457.  On May 28, 2014, Dr. Radadiya again noted that plaintiff reported severe and persistent musculoskeletal pain, aggravated by activity, and that she was limping.  Tr. 501-02.  Nothing was helping her pain, her left knee was getting worse and she was experiencing limitation of activity.  Id.  On July 24, 2014, Dr. Radadiya recorded that plaintiff reported moderate to severe pain and that activity aggravated her symptoms.  Plaintiff was limping and experiencing activity limitation and stiffness.  Tr. 513.  On July 29, 2014, Dr. Radadiya noted that plaintiff was experiencing activity limitation and moderate to severe pain.  Tr. 518.  On November 18, 2014, Dr. Radadiya noted that plaintiff's ankylosing spondylitis was "under good control" and continued her on medications.  On April 8, 2015, Dr. Radadiya noted that plaintiff reported severe musculoskeletal pain that activity aggravated.  Tr. 642.  On May 7 and June 16, 2015, Dr. Radadiya noted that plaintiff reported moderate to severe persistent musculoskeletal pain that was worsening.  Tr. 656, 664.  On September 16, 2015, plaintiff told Dr. Radadiya that she had been unable to obtain her Humira because of an insurance issue and accordingly, that her pain was worsening, and she had to use a walker.  Dr. Radadiya stated that plaintiff could safely use a walker.  Tr. 23.

With respect to plaintiff's knee impairment, Dr. Radadiya diagnosed her with osteoarthritis and administered injections into either her right or left knee on February 18, May 12, May 28, July 24, July 29 and October 21, 2014 and April 8, 2015. Tr. 24. On July 25, 2016, an MRI of plaintiff's left knee revealed severe primary osteoarthritis. Id.

On December 2, 2013, two pain management specialists, Drs. Dawood Sayed and Frank Sahli, determined that an MRI of plaintiff's lumbar spine indicated changes consistent with mild degenerative disc disease of the lumbar spinal facets. Tr. 23. Plaintiff reported that she had experienced chronic back pain since the mid-1990s and had received multiple epidural steroid injections that had provided pain relief. She reported worsening pain around her sacroiliac ("SI") joint with radiation to her left leg. Any activity, working or exercise worsened her pain. She complained of numbness radiating down her left leg to her knee. She took ibuprofen, hydrocodone and acetaminophen, which mildly relieved her pain. Id. Drs. Sayed and Sahli recorded the following findings: left-sided SI joint tenderness and pain that is exacerbated by extension of the lower back; negative straight-leg test; normal balance and gait; bilaterally equal strength. Drs. Sayed and Sahli noted a diagnostic impression of "lower back pain most consistent with facet syndrome."[2] On January 3 and January 17, 2014, Dr. Sayed performed two diagnostic medial branch block procedures on plaintiff. Tr. 24.

From March of 2014 to March of 2015, Dr. Brian Jones, a pain management specialist, gave plaintiff a series of lumbar epidural steroid injections. Id. In March of 2015, Dr. Jones

---

[2]     "Facet Joint Syndrome is a condition in which arthritic change and inflammation occur, and the nerves to the facet joints convey severe and diffuse pain." UCLA Health, Conditions Treated, Facet Joint Syndrome, http://neurosurgery.ucla.edu/facet-joint-syndrome (last visited June 19, 2019).

noted that plaintiff's paraspinous musculature was diffusely tender in the lumbar distribution of the mid and lower lumbar bilaterally but without trigger points. Her motor examination was "strong with 5/5 dorsiflexion, extension, quadriceps, and hamstring flexion bilaterally." Tr. 24.

As to plaintiff's mental impairments, on May 2, 2016, Pratip Patel, M.D., her primary medical doctor, diagnosed her with anxiety. He prescribed Lexapro and advised her to see a psychiatrist. Dr. Patel told plaintiff that he would not prescribe Xanax for her. Tr. 24.

On June 21, 2016, Kelly Bisel, D.O., a staff psychiatrist at Wyandot Mental Health Center, diagnosed plaintiff with generalized anxiety disorder and major depressive disorder, single episode, moderate. Dr. Bisel prescribed Celexa.

At a follow-up on August 25, 2016, plaintiff stated that she was struggling to take the Celexa. Tr. 25. On September 2, 2016, plaintiff told Dr. Patel that she was depressed but admitted that she was not taking "most of the medications prescribed to her." Sometimes she forgot to take them and other times she just did not want to take them. Tr. 25.

Dr. Radadiya submitted a medical source statement regarding plaintiff's functional limitations. Tr. 819-21. Dr. Radadiya opined that plaintiff can occasionally and frequently lift and carry ten pounds; can sit for less than two hours in an eight-hour day; must periodically alternate sitting, standing or walking; can only sit for 20 minutes before changing position; can only stand for ten minutes before changing position; must walk around every ten minutes for five to ten minutes; requires the opportunity to shift at will from sitting or standing/walking up to four times per day. Tr. 819. Dr. Radadiya determined that plaintiff can occasionally twist, stoop and climb stairs but can never crouch or climb ladders, and that her impairment affects her ability to reach and pull. Tr. 820. Dr. Radadiya opined that plaintiff should avoid even moderate exposure

to extreme cold and that she will on average miss work more than three times per month. Tr. 820-21.

Two state agency medical consultants, Dr. Dick A. Geis and Dr. John May, provided opinions. Dr. Geis determined that plaintiff has some postural limitations but can perform light work. Tr. 26, 77-85. Dr. May determined that plaintiff has some postural limitations but can perform sedentary work. Tr. 26, 87-94.

## II.    Plaintiff's Testimony

At the administrative hearing on January 5, 2017, plaintiff testified as follows.

Plaintiff believes she completed ninth grade but thinks "some records came up saying that [she] maybe didn't complete the ninth grade." Tr. 41. She does not have a General Education Diploma ("GED") or any vocational training, but she can read and write and do simple math. Tr. 41-42, 68. Plaintiff is not married, and her 17-year-old adopted nephew and 18-year-old daughter live with her. Tr. 42. She can drive but experiences pain in her lower back and sometimes in her leg if she drives for longer than 30 minutes. Id. Plaintiff used to smoke a pack of cigarettes per day but now only smokes ten or fewer cigarettes per day. Tr. 43.

For the 15 years prior to the alleged onset date, plaintiff worked as a mail machine operator. Tr. 43. In this capacity, she prepared material for mailing and loaded it into a machine. This job required her to stand on a concrete floor and lift anywhere from 40 to 50 pounds. Tr. 44. Plaintiff was between jobs for fewer than two months during this 15-year period and her employers provided health insurance. Tr. 44-45.

In 2009, plaintiff was diagnosed with ankylosing spondylitis, which causes inflammation in her back and "issues beginning all the way from [her] neck, upper back, lower back, shoulders, hips, legs causing sciatica and, stuff like that." Tr. 47-48. She also has "issues with [her] heels

and ankles," inflammation in her joints and tendons, and swelling in her knees. Tr. 48. Plaintiff has chronic ear infections and fibromyalgia, which primarily affects her upper body. Tr. 51, 68. Periodic steroid injections provide her with short-term pain relief that lasts between one and three months. Tr. 49. From 2009 to until she lost employer-provided health insurance in 2014, plaintiff received three injections per year, which is the maximum. Tr. 61. She also takes heavier pain medication such as oxycodone and hydrocodone. When she takes the heavier pain medication, she gets sleepy and has difficulty focusing. Plaintiff takes a muscle relaxer and pain medication before she goes to bed. Tr. 62. Because of her pain and stiffness, she has low sleep quality and wakes up every two hours. Tr. 63. On a good night, plaintiff obtains about four hours of sleep. Tr. 63. More often than not, she takes a two-hour nap during the day. Tr. 63.

In the beginning of 2014, plaintiff experienced a panic attack due to the stress of her health issues. Tr. 49-50. She now has panic attacks about once per month. Plaintiff also engages in obsessive compulsive behaviors and experiences depression. Tr. 65. Her depression is most severe when she has "flare ups" that intensify her pain such that she "literally can't do anything." Tr. 65. On average, plaintiff has flare ups once per month. Tr. 66. She also takes medication for anxiety and a panic disorder. Tr. 51, 53.

Through a combination of pain medication, steroid injections and leave under the Family And Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, plaintiff maintained employment until 2014. Tr. 45. In 2014, however, plaintiff's employer terminated her employment because she made "production mistakes." Tr. 46. She attributes some of these mistakes to her medication. Tr. 47.

Plaintiff testified that she cannot sit comfortably for more than about 30 minutes. Tr. 54. She cannot stand for more than about 30 minutes and she cannot actively walk for more than about

30 minutes.  Tr. 55.  Plaintiff sometimes uses a cane or walker.  Tr. 55.  She can carry about as much weight "as the average person [her] size," but carrying weight aggravates her condition.  Tr. 56.  Plaintiff reclines on a loveseat about 99 per cent of the time and her children help her with household chores.  Tr. 58.  She cannot wash the dishes, but she does cook and do laundry.  Tr. 58-60.  Plaintiff shops for groceries by herself, but her daughter usually assists her.  On a good day, she can push a grocery cart.  She uses an electric cart if it is available.  Tr. 60.

Since plaintiff's employer terminated her employment in 2014, she has had the state version of Medicaid, which has limited her ability to obtain steroid injections for her back and knees.  Tr. 46.  Once a month or every other month, Dr. Radadiya treats plaintiff for pain.  Dr. Patel, plaintiff's primary care provider, treats her once every three months.  Tr. 67.

## III.    **Vocational Expert Testimony**

The ALJ asked the vocational expert to identify any inconsistencies between his testimony and the Dictionary of Occupational Titles ("DOT").  The vocational expert identified plaintiff's past work as a mail machine operator and did not indicate any inconsistencies between his testimony and the DOT.  Tr. 69-70.  The ALJ asked the vocational expert if a hypothetical individual with the following limitations could perform work available in the national economy: simple work; occasionally lift ten pounds; frequently lift ten pounds; walk or stand two hours out of an eight-hour day; sit for six hours out of an eight-hour day; occasionally climb stairs but never climb ropes, scaffolds or ladders; occasionally stoop; probably never kneel, crouch or crawl; and avoid unprotected heights and hazardous moving machinery.  Tr. 70-71.  The vocational expert testified that an individual with those limitations could work as a call out operator, addresser or document preparer.  Tr. 71.  He testified that those jobs are primarily seated, i.e. a call out operator would have very little to transport and an addresser or document preparer would have to

transport minimal items.  He also testified that an individual who could walk or stand for two hours and sit for two hours out of an eight-hour day could not perform those jobs, and that an individual who would miss work four days a month could not perform any work.  Tr. 71-72.

## IV.  **ALJ Findings**

The ALJ denied plaintiff benefits, finding that she is not disabled and is capable of performing work in the national economy.  Tr. 27-28.  Specifically, the ALJ found as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2. The claimant has not engaged in substantial gainful activity (SGA) since January 1, 2015, her amended alleged onset date (20 CFR 404.1571 et seq.).  * * *

3. The claimant has the following severe impairments: obesity; ankylosing spondylitis; disorder of the back; degenerative joint disease (DJD) of the bilateral knees; fibromyalgia; depression; and anxiety (20 CFR 404.1520(c)). * * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  * * *

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as that term is defined in 20 CFR 404.1567(a) and SSR 83-10, except that nonexertional limitations reduce the claimant's capacity for sedentary work. Specifically, she is able to occasionally lift 10 pounds and frequently lift 10 pounds.  She is able to walk or stand for 2 hours out of an 8 hour day and sit for 6 hours out of an 8 hour day.   She can occasionally climb stairs but never climb ropes, scaffolds, or ladders.  She can occasionally stoop.  She should never kneel, crouch or crawl.  She should avoid unprotected heights and hazardous moving machinery.  She is limited to simple work.  * * *

6. The claimant is unable to perform her sole past relevant work (20 CFR 404.1565). * * *

7. The claimant was born on April 29, 1976 and was 38 years old, which is defined as a younger individual age 18-44, on her alleged disability onset date (20 CFR 404.1563). * * *

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564). * * *

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)). * * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2015 through the date of this decision (20 CFR 404.1520(g)).

Tr. 17-28.

## Analysis

Plaintiff bears the burden of proving disability under the SSA. Wall, 561 F.3d at 1062. Plaintiff is under a disability if she has a severe physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993); see 42 U.S.C. § 423(d)(1)(A). The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010). In the first three steps, the Commissioner determines whether (1) plaintiff has engaged in substantial gainful activity since the alleged onset, (2) plaintiff has a severe impairment or

combination of impairments and (3) the severity of any impairment is equivalent to one of the listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i)-(iii); see Williams, 844 F.2d at 750-51. If plaintiff satisfies steps one, two and three, the Commissioner will automatically find her disabled. If plaintiff satisfies steps one and two but not three, the analysis proceeds to step four.

At step four, the ALJ must make specific factual findings regarding plaintiff's abilities in three phases. See Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996). First, the ALJ determines plaintiff's physical and mental residual functioning capacity ("RFC"). Id. at 1023. Second, the ALJ determines the physical and mental demands of plaintiff's past relevant work. Id. Third, the ALJ determines whether despite the mental and/or physical limitations found in phase one, plaintiff has the ability to meet the job demands found in phase two. Id.; Henrie v. U.S. Dep't of HHS, 13 F.3d 359, 361 (10th Cir. 1993). If plaintiff satisfies step four, i.e. if plaintiff shows that she is not capable of performing past relevant work, the burden shifts to the Commissioner to establish at step five that plaintiff is capable of performing other work in the national economy. Williams, 844 F.2d at 751.

Plaintiff asserts that substantial evidence does not support the ALJ's conclusion that she is not disabled under the SSA. Specifically, she asserts that the ALJ (1) erred in weighing and assessing the opinion of her treating rheumatologist, Dr. Shashank Radadiya, (2) did not properly assess her testimony about her symptoms, (3) erroneously failed to consider her prior work history and (4) erred in relying on vocational expert testimony. Plaintiff's Brief In Support Of Petition To Reverse Decision Of The Defendant (Doc. #13) filed December 7, 2018 at 7-16.

I.    **Evaluation Of Treating Medical Source Opinion**

Plaintiff asserts that the ALJ erred in weighing and assessing the opinion of Dr. Radadiya,

plaintiff's treating rheumatologist.  Id. at 7.  The Commissioner claims that the ALJ properly evaluated Dr. Radadiya's opinion and that substantial evidence supports his decision to discount it.  Brief Of The Commissioner (Doc. #16) filed February 5, 2019 at 4-5.

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [plaintiff's] impairment(s), including [plaintiff's] symptoms, diagnosis and prognosis, what [plaintiff] can still do despite impairment(s), and [plaintiff's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  The ALJ gives particular weight to a treating physician's opinion because of his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 416.927(c)(2); Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

In evaluating the medical opinion of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct.  Krauser v. Astrue, 638 F.3d 1324, 1330 (10th Cir. 2011).  The first step requires the ALJ to determine whether the opinion is entitled to controlling weight because it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record."  20 C.F.R. § 404.1527(c)(2); Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight and the ALJ proceeds to the second step of the inquiry.  Id.  Even if the ALJ does not assign controlling weight to a treating physician's opinion, it is still entitled to deference.  Mays v. Colvin, 739 F.3d 569, 574 (10th Cir. 2014).

In the second step, the ALJ must decide what weight to assign to the opinion in light of the factors set forth at 20 C.F.R. § 404.1527; Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir.

2013).   The ALJ must make clear how much weight he accords the opinion (including whether he rejects it outright), and give good reasons for the weight he assigns to it, in light of the following factors:

> (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Krauser, 638 F.3d at 1331.   While the ALJ need not expressly consider all of the relevant factors, his decision must make clear what weight he assigns to the medical opinion and the reasons for that weight.   Sitsler v. Astrue, 410 F. App'x 112, 119 (10th Cir. 2011).   In addition, if the treating physician opinion conflicts with another opinion, the ALJ must examine the other physician's reports to see if they outweigh the treating physician's report, "not the other way around."   Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988).

As noted, on the medical source statement, Dr. Radadiya opined that plaintiff can occasionally and frequently lift and carry ten pounds; can sit for less than two hours in an eight-hour day; must periodically alternate sitting, standing or walking; can only sit for 20 minutes before changing position; can only stand for ten minutes before changing position; must walk around every ten minutes for five to ten minutes; and requires the opportunity to shift at will from sitting or standing/walking up to four times per day.   Tr. 819.   Dr. Radadiya determined that plaintiff can occasionally twist, stoop and climb stairs but can never crouch or climb ladders, and that her impairment affects her ability to reach and pull.   Tr. 820.   Dr. Radadiya opined that plaintiff should avoid even moderate exposure to extreme cold and that she will on average miss work more than three times per month.   Tr. 820-21.

In determining plaintiff's RFC, the ALJ gave Dr. Radadiya's opinion "little weight," stating as follows:

> As for the opinion evidence not already evaluated above, the undersigned gives little weight to the medical source statement submitted by Dr. Radadiya dated August 17, 2015 (Exhibit 13F). The functional limitations opined by Dr. Radadiya are not supported by the findings in her contemporaneous treatment notes, or by any other medical evidence in the record. For example, although Dr. Radadiya's notes document some tender points, they also consistently document a normal gait with no other functional observations or findings. Dr. Radadiya's opinions are also inconsistent with the opinions of the State agency medical consultants, Dr. Geis and Dr. May. Dr. Geis and Dr. May both determined that the claimant is able to perform work at the light exertional level with some postural limitations (Exhibits 2A, 3A). However, the undersigned gives only partial weight to the opinions from Dr. Geis and Dr. May because the evidence in the record at the hearing level, including the claimant's partially consistent testimony, shows that the claimant is more limited than as opined by Dr. Geis and Dr. May, but not as limited as opined by Dr. Radadiya.

Tr. 26.

The Court finds that the ALJ's analysis is flawed because he failed to follow the required two-step procedure. Instead of addressing the two "analytically distinct" steps, the ALJ collapsed the inquiry into one. See Chrismon v. Colvin, 531 F. App'x 893, 901 (10th Cir. 2013) (ALJ erred by collapsing two-step inquiry into single point). Skipping the controlling weight question, the ALJ only stated that he gave Dr. Radadiya's opinion "little weight." Although this is not reversible error by itself, Mays v. Colvin, 739 F.3d 569, 575 (10th Cir. 2014), the ALJ also failed to set out the standard for assessing the opinion of a treating physician and did not address relevant factors including the length and treatment relationship and frequency of examination, the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, and whether the physician is a specialist in the area upon which she renders an opinion. See Brownrigg v. Berryhill, 688 F. App'x 542, 548 (10th Cir. 2017) (remanding where ALJ failed to mention relevant factors, let alone tie them to reasoning); see also

Chrismon, 531 F. App'x at 901 (explicit findings properly tied to each step of prescribed analysis facilitate meaningful judicial review); Krauser, 638 F.3d at 1330 (remand required if ALJ fails to tie reasons to relevant factors).  But see Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (factor-by-factor analysis not required, as long as factors considered).

Even if the Court were to find that the ALJ implicitly considered the relevant factors despite his failure to explicitly mention them, substantial evidence does not support his decision to give little weight to Dr. Radadiya's opinion.   The ALJ based his decision on his finding that (1) neither Dr. Radadiya's contemporaneous treatment notes nor any medical evidence of record support her opinion regarding plaintiff's functional limitations and (2) Dr. Radadiya's opinions are inconsistent with the opinions of the State agency medical consultants Drs. Geis and May.

The record belies the ALJ's finding.   While the ALJ correctly states that Dr. Radadiya's notes "document a normal gait," he incorrectly states that she documented "no other functional observations or findings."[3]   To the contrary, on January 27, 2014, Dr. Radadiya noted that plaintiff had severe musculoskeletal pain and was experiencing activity limitation and morning stiffness. Tr. 457.   On May 28, 2014, Dr. Radadiya again noted that plaintiff reported severe and persistent musculoskeletal pain, aggravated by activity, and that she was limping.   Tr. 501-02.   She reported that plaintiff was experiencing "activity limitation."   Tr. 501.   On July 24, 2014, Dr. Radadiya recorded that plaintiff reported moderate to severe pain and that activity aggravated her symptoms.   Plaintiff was limping and experiencing activity limitation and stiffness.   Tr. 513.

---

[3]      The ALJ correctly states that Dr. Radadiya "consistently document[ed] a normal gait," but plaintiff asserts that "normal gait" is a neurological measure that is not mutually exclusive of a finding of functional limitations.   Plaintiff's Brief (Doc. #13) at 8; see, e.g., Tr. 457-58 (noting that plaintiff had activity limitations *and* normal balance and gait).   On remand, the ALJ should further develop the record on this issue.

On July 29, 2014, Dr. Radadiya noted that plaintiff was experiencing activity limitation and moderate to severe pain. Tr. 518. On April 8, 2015, Dr. Radadiya noted that plaintiff reported severe musculoskeletal pain, aggravated by activity. Tr. 642. On May 7 and June 16, 2015, Dr. Radadiya noted that plaintiff reported worsening moderate to severe persistent musculoskeletal pain. Tr. 656, 664. Although the ALJ recited some of Dr. Radadiya's treatment records, he omitted her notes regarding plaintiff's functional limitations, i.e. limitation of activity, limping, etc.

The record also contradicts the ALJ's statement that no other medical evidence supports Dr. Radadiya's opinion. For example, on July 25, 2016, an MRI of plaintiff's left knee revealed severe primary osteoarthritis. Tr. 24. Drs. Sayed and Sahli also recorded that along with normal balance and gait, plaintiff had left-sided SI joint tenderness and pain which extension of her lower back exacerbated.

With respect to consistency with the consulting opinions of Drs. Geis and May, the ALJ mistakenly stated that both Drs. Geis and May found that plaintiff can perform light work. Dr. May found that plaintiff is only capable of performing sedentary work. Compare Tr. 26 with Tr. 94. Even though the ALJ ultimately found plaintiff to be capable of only sedentary work, the fact that he partly based his decision to discount the opinion of a treating physician on a misstatement of what a consultative physician found is problematic.

In making his decision, an ALJ must consider all the evidence, and discuss the evidence supporting his decision, the uncontroverted evidence upon which he chooses not to rely and significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). He may not, however, selectively abstract evidence in support of his decision and ignore evidence supportive of plaintiff's allegations, which is what the ALJ did here. Jones v. Astrue,

-16-

500 F. Supp. 2d 1277, 1285 (D. Kan. 2007); Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995). Substantial evidence does not support his decision to give little weight to the medical source statement of plaintiff's treating physician. In so finding, the Court does not express an opinion on the proper weight the ALJ should give that opinion, but only directs the ALJ to properly evaluate it on remand.

## II.     Plaintiff's Testimony About Symptoms

Plaintiff asserts that the ALJ failed to articulate specific reasons for finding that her testimony concerning the intensity, persistence and limiting effects of her symptoms was inconsistent with the evidence of record. The Commissioner asserts that the ALJ properly evaluated plaintiff's symptoms and provided good reasons for not accepting some of her testimony.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[4]  Newbold, 718 F.3d at 1267 (internal quotation marks omitted). The Court considers subjective testimony regarding symptoms as follows:

> The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

---

[4]      On March 16, 2016, Social Security Ruling 16-3p, 2016 WL 1119029, superseded Social Security Ruling 96-7p to eliminate use of the term "credibility" from the Administration's sub-regulatory policy. Despite elimination of this term, the analysis appears to remain the same.

Thompson, 987 F.2d at 1488 (dealing specifically with pain) (further citations and quotation marks

omitted).   In evaluating credibility, the ALJ should consider

> the levels of medication and their effectiveness, the extensiveness of the attempts
> (medical or nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are peculiarly
> within the judgment of the ALJ, the motivation of and relationship between the
> claimant and other witnesses, and the consistency or compatibility of nonmedical
> testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489); see

Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

be expected to cause her alleged symptoms, but that the record did not support her statements

concerning the intensity, persistence and limiting effects of these symptoms.   Tr. 25.   He stated

that "her subjective allegations far exceed the mental status findings in her medical records."

Tr. 25.   The ALJ also stated that her "subjective allegations regarding her physical complaints

also far exceed her examination findings."   Id.   He added that her subjective allegations regarding

her symptoms were inconsistent with her "wide range of daily activities."   Id.

As to plaintiff's mental impairments, the ALJ did not explain what subjective allegations

exceed which medical records.   As to her physical impairments, the ALJ found that plaintiff's

claim that she needed a cane or walker lacked credibility because the examination findings of Dr.

Radadiya and Dr. Patel "consistently document a normal gait and station."   Tr. 25.   This is

problematic because as noted above, Dr. Radadiya's treatment records indicate that plaintiff was

experiencing activity limitation and limping.[5]   Although the ALJ considered some of the relevant

---

[5]        On remand, the ALJ should further develop the significance of "normal gait and
station" and whether this is a neurological test or a physical test.

factors, e.g., plaintiff's daily activities, he did not explain why the specific evidence relevant to each factor led him to conclude that plaintiff's complaints were not credible. See Kepler, 68 F.3d at 391. The ALJ's failure to "closely and affirmatively" link his credibility finding to substantial evidence leaves the Court with only speculation as to why he found plaintiff's testimony inconsistent with the record. See Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988). On remand, the ALJ should evaluate plaintiff's credibility in light of the factors set forth above.

### III.    Plaintiff's Prior Work History

Plaintiff asserts that the ALJ "simply ignored" her good work record. She asserts that her long work history indicates that she is motivated to work and is a positive factor that the ALJ failed to consider. Plaintiff's Brief (Doc. #13) at 14.

This argument is meritless because the ALJ did consider her work history. In finding that plaintiff was unable to perform her past relevant work as a mail machine operator, he noted that she performed this work long enough to achieve average work performance. The ALJ also noted that "claimant worked at a skilled job for many years." Tr. 27. On this issue, the ALJ did not err.

### IV.    Reliance On Vocational Expert Testimony

Plaintiff asserts that substantial evidence does not support the ALJ's determination that she could perform the requirements of call out operator, addresser and document preparer. Plaintiff's Brief (Doc. #13) at 15. She asserts that her RFC of "simple work" is incompatible with the jobs of call out operator and document preparer because they require a reasoning level of three, and her RFC is incompatible with addresser because it requires a reasoning level of two. Plaintiff asserts that these jobs require the ability to carry out detailed instructions, which is beyond her limitation of simple work. Id.

The DOT states that call out operator and document preparer jobs require a reasoning level of three, which is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." DICOT 237.367-014 (G.P.O.), 1991 WL 672186 (call out operator requires level three reasoning); DICOT 249.587-018 (G.P.O.), 1991 WL 672349 (same for document preparer). The DOT states that addresser requires a reasoning level of two, which is defined as the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DICOT 209.587-010 (G.P.O.), 1991 WL 671797.

In Hackett v. Barnhart, the Tenth Circuit held that the ALJ erred in finding that plaintiff could perform jobs requiring a reasoning level of three when plaintiff's RFC stated that plaintiff "retains the attention, concentration, persistence and pace levels required for simple and routine work tasks." 395 F.3d 1168, 1176 (10th Cir. 2005). The court noted that level two reasoning was more consistent with plaintiff's RFC and directed the ALJ "to address the apparent conflict between Plaintiff's inability to perform more than simple and repetitive tasks and the level-three reasoning required by the jobs identified as appropriate for her by the [vocational expert]." Hackett, 395 F.3d at 1176.

The reasoning of Hackett applies here. The ALJ's finding that plaintiff is only capable of simple work is inconsistent with the vocational expert testimony that she can perform the level-three reasoning jobs of call out operator and document preparer. Indeed, call out operator was one of the level-three jobs at issue in Hackett. See Hackett, 395 F.3d at 1176. Before an ALJ may rely on vocational expert testimony as substantial evidence to support a determination that

-20-

plaintiff is not disabled, he or she must "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony." Haddock v. Apfel, 196 F.3d 1084, 1091 (10th Cir. 1999). Even though the ALJ asked the vocational expert if his testimony was consistent with the DOT, it clearly was not.[6] See Paulek v. Colvin, 662 F. App'x 588, 594 (10th Cir. 2016). Accordingly, on remand, the Commissioner should elicit a reasonable explanation for how plaintiff can perform level-three reasoning jobs while limited to simple work.

## Conclusion

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum And Order.

Dated this 19th day of June, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

---

[6] Plaintiff's assertion that the ALJ failed to ask the vocational expert whether his testimony was consistent with the DOT is mistaken. See Tr. 69-70.